In re Willard C. McBRIDE, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 88–BG–1563.

District of Columbia Court of Appeals.

Submitted Sept. 9, 1993.

Decided June 2, 1994.

Leonard H. Becker, Bar Counsel, and Michael S. Frisch and Julia L. Porter, Asst. Bar Counsel, Washington, DC, were on the brief for petitioner, the Office of Bar Counsel.

Joseph M. Jones, Washington, DC, for respondent.

Before TERRY and SULLIVAN, Associate Judges, and GALLAGHER,* Senior Judge.

PER CURIAM:

This disciplinary matter is before the court on the report and recommendation of the Board on Professional Responsibility (the Board), to which respondent and Bar Coun-

* Former *Chief Judge* ROGERS was a member of the division in this case. After her departure from the court, *Senior Judge* GALLAGHER was selected by lot to replace her.

sel concur, that respondent be suspended for a period of one year *nunc pro tunc* to March 7, 1989. On that date, this court temporarily suspended respondent following his conviction of a "serious crime" within the meaning of D.C.Bar R. XI, § 10(b), namely, aiding and abetting the commission of a misdemeanor offense against the United States in violation of 18 U.S.C. §§ 1028(a)(4), and (b)(3) (1988).[1]

The factual and procedural history of this matter are set forth in the Report and Recommendation of the Board, which we incorporate by reference and attach hereto as an appendix, and in this court's two prior opinions involving respondent. *See In re McBride*, 602 A.2d 626 (D.C.1992) (en banc) (*McBride II* ); *In re McBride*, 578 A.2d 1102 (D.C.1990) (*McBride I* ). Essentially, in *McBride II*, the en banc court reversed a decision by a division of this court in *McBride I* to permanently disbar respondent and remanded the case to the Board for a determination as to whether, "on the facts, McBride's [misdemeanor] conviction under 18 U.S.C. §§ 1028(a)(4) and (b)(3) (1988) involves moral turpitude." *McBride II, supra,* 602 A.2d at 641.

We review the Board's recommendation in accordance with D.C.Bar R. XI, § 9(g) (1993), which provides, in part, as follows:

> the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.

*Id. See also In re Hutchinson*, 534 A.2d 919, 924 (D.C.1987) (en banc). We conclude that the Board's findings are supported by sub-stantial evidence in the record and that the Board's recommended sanction is warranted and is not inconsistent with previous dispositions for comparable conduct. *See In re Kerr*, 611 A.2d 551 (D.C.1992); *In re Thompson*, 538 A.2d 247 (D.C.1987); *In re Hutchinson, supra.*

Accordingly, Willard C. McBride is hereby suspended from the practice of law in the District of Columbia for one year, *nunc pro tunc* to March 7, 1989. In view of the aberrational nature of respondent's misconduct, the remorse expressed by him for the misconduct, and his otherwise exemplary record, the court will not require respondent to furnish proof of rehabilitation as a condition of reinstatement pursuant to D.C.Bar R. XI, § 3(a)(2) (1993).

*So ordered.*

ATTACHMENT

APPENDIX

DISTRICT OF COLUMBIA
COURT OF APPEALS

BOARD ON PROFESSIONAL
RESPONSIBILITY

In the Matter of

WILLARD C. McBRIDE,

Respondent

Bar Docket Number: 394–88

### REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

On August 31, 1988, Respondent pled guilty to, and was convicted of a misdemean-

---

1. 18 U.S.C. § 1028(a)(4) (1988) provides in part:
   (a) Whoever ...

         ✻    ✻    ✻    ✻    ✻    ✻

   (4) knowingly possesses an identification document (other than one issued lawfully for the use of the possessor) or a false identification document, with the intent such document be used to defraud the United States; [ ]

   (b) The punishment for an offense under subsection (a) of this section is-

         ✻    ✻    ✻    ✻    ✻    ✻

   (3) a fine of not more than $5,000 or imprisonment for not more than one year, or both, in any other case.

or for violating 18 U.S.C. § 1028(a)(4), *i.e.*, willfully and knowingly aiding and abetting Patricia Shahid in the possession and use of an identification document in order fraudulently to induce the issuance of a United States passport. On March 7, 1989, the District of Columbia Court of Appeals ordered Respondent suspended from the practice of law because he had been convicted of a "serious crime" within the meaning of D.C.App.R. XI, § 10(b). A division of the Court subsequently concluded that Respondent's criminal violation inherently involved moral turpitude and ordered his permanent disbarment. *In re McBride*, 578 A.2d 1102, 1103 (D.C.1990). This decision was later overturned by the *en banc* Court, which held for the first time that misdemeanor offenses can never be crimes that inherently involve moral turpitude, *In re McBride*, 602 A.2d 626 (D.C.1992) (*en banc*), and remanded the matter for the Board to determine whether, under the circumstances, moral turpitude was involved in Respondent's behavior.

Thereafter, the Board referred the case to a hearing committee to consider whether Respondent's conduct constituted a crime of moral turpitude. The Board's order permitted Bar Counsel to file a petition charging specific disciplinary rule violations. Bar Counsel filed such a petition but did not allege that Respondent's acts constituted moral turpitude. Instead, on June 22, 1992, Bar Counsel charged Respondent with violating Disciplinary Rule 1–102(A)(4), engaging in conduct involving dishonesty, fraud, deceit and misrepresentation. Respondent's answer admitted that he violated DR 1–102(A)(4).

Following an evidentiary hearing, Hearing Committee Number One recommended that Respondent be suspended for six months, *nunc pro tunc* to his March 7, 1989 suspension. Neither Bar Counsel nor Respondent challenges the Hearings Committee's recommendation.

### FACTS

The Board accepts the factual findings contained in the Recommendation of the Hearing Committee (pp. 6–12), which are essentially as follows:

Respondent, now age 74, has been a member of this Bar since 1954, and prior to this incident had never been the subject of a disciplinary or criminal investigation. For 28 years, he served as an attorney at the Department of Justice, specializing in the prosecution of tax crimes. Upon his retirement in 1983, he became a sole practitioner, devoting most of his time to *pro bono* work for the aged, the poor, and the infirm.

Mrs. Patricia Shahid, an immigrant from Pakistan, was one of Mr. McBride's *pro bono* clients. Mrs. Shahid sought to change her immigration status from visitor to resident alien so that she and her children could settle here. To complete the change in her immigration status, Mrs. Shahid was required to return to Pakistan, her country of origin.

Shortly before her departure, Mrs. Shahid became fearful that some bureaucratic snag would arise and prevent her from returning to the United States. She was particularly frightened because her former husband lived in Pakistan, and he had been physically abusive. In a state of panic, Ms. Shahid pleaded with Respondent to help her obtain a United States passport with which she could re-enter this country in the event that her immigration status was not approved.

Mrs. Shahid convinced Respondent to help her obtain a passport using the birth certificate of Kathy Williams, another of Respondent's *pro bono* clients and Mrs. Shahid's neighbor. Respondent accompanied Mrs. Shahid to the passport office where she presented herself as Ms. Williams and used the birth certificate, which she had obtained from Respondent, to apply for the passport. Respondent assisted her by signing a false statement indicating that Mrs. Shahid was in fact Ms. Williams. When Respondent and Mrs. Shahid returned to the passport office, they were arrested. Eventually, Respondent pled guilty to aiding and abetting Mrs. Shahid in violation of 18 U.S.C. §§ 2, 1028(a)(4),

and 1028(b)(3). In sentencing Respondent to 100 hours of community service, U.S. Magistrate Judge Jean Dwyer said that, he had "let his heart carry his head," thus causing him to commit this single "aberrational" act.

During his suspension, Respondent continued his voluntary (now non-legal) community service, which included continuing to help Mrs. Shahid with her day-to-day affairs. Though he could no longer work as an attorney, Respondent kept abreast of new legal developments and worked as a law clerk for several area attorneys. On the basis of the foregoing facts, the Hearing Committee recommended that Respondent be suspended for six months, retroactive to March 7, 1989, and that he not be required to demonstrate fitness to practice as a condition of his reinstatement to the bar.

## DISCUSSION

### I. *Moral Turpitude*

■ Although the hearing committee found an absence of moral turpitude, it did not discuss its reasoning, probably because Bar Counsel did not allege that Respondent had committed a crime of moral turpitude. Nevertheless, we believe the question is before us and that some discussion is warranted. The Court of Appeals' opinion specifically remanded the case for consideration of the moral turpitude issue, and we are required to consider the issue even if Bar Counsel does not raise it.

■ According to *In re Colson*, 412 A.2d 1160 (D.C.1979), conduct encompasses moral turpitude if it offends the generally accepted moral code of mankind. An act may also involve moral turpitude if it is base, vile or depraved, *Id.* at 1168 (quoting 2 *Bouv. Law Dictionary* 2247 (Rawles Third Revision)), or if it is contrary to justice, honesty, modesty, or good morals. *Id.* (quoting *Black's Law Dictionary* 1160 (4th ed. 1951). Moral turpitude has commonly been interpreted as intentionally acting dishonestly for personal gain. *E.g., In re Shorter*, 570 A.2d 760, 765

(D.C.App.1990); *In re Kent*, 467 A.2d 982, 984 (D.C.App.1983).

In this case, Respondent's acts were not motivated by a desire for personal gain. And, although his acts may be legally and ethically blameworthy, they cannot be said to be depraved or vile. *See Shorter*, 570 A.2d at 767. In contrast, those cases where conduct was found to involve moral turpitude have usually involved far more serious ethical breaches that have harmed others, *i.e.*, outright embezzlement of client funds, *In re Wade*, 526 A.2d 936 (D.C.1987), and obstruction of justice by defaming the parties to a criminal proceeding, *In re Colson*, 412 A.2d at 1168. Respondent's conduct harmed no one and, although misguided, was intended to help a friend. His conduct did not involve moral turpitude.

### II. *The Appropriate Sanction*

■ In past cases where an attorney has committed a crime by lying to a federal agency in violation of DR 1–102(A)(4), the sanction has been a one year suspension. *See, e.g., In re Kerr*, 611 A.2d 551 (D.C.1992) (filing a false tax return); *In re Thompson*, 538 A.2d 247 (D.C.1987) (presenting false statements to the INS); *In re Hutchinson*, 534 A.2d 919 (D.C.1987) (en banc) (making false statements to the SEC). The most instructive of these cases is *In re Thompson*, where, on facts very similar to those of this case, the Court refused to accept the Board's recommendation of a sixth month suspension, and instead imposed a one year suspension. Thompson represented an alien who, like Mrs. Shahid, was applying for permanent resident status. Like the Respondent, Thompson knowingly assisted his client in the presentation of false information to a federal agency. Thompson was charged with a felony violation of 18 U.S.C. § 1001—making a false statement to a federal agency. The Court stated that such misrepresentations to federal agencies must be treated quite seriously, and that Thompson had disregarded his professional obligation to be scrupulously honest. *In re Thompson*, 538

A.2d at 248. Accordingly, it suspended Thompson for one year.

It is true that there are mitigating circumstances present in Respondent's case not found in Thompson's. Respondent had been a longstanding member of the bar with no disciplinary history, where Thompson, on the other hand, had been previously disciplined. A good professional history, however, has not always saved a lawyer from a one year suspension. For example, in deciding Thompson's sanction, the court relied on *In re Hutchinson*, where a lawyer with a spotless disciplinary record was suspended for a year.

In *Hutchinson*, like Thompson and McBride, a lawyer intentionally misled a federal agency. Hutchinson had unknowingly received insider information from a close friend, and made some investments based on this information. When he found out that the information was obtained from an inside source, he confronted his friend. The friend begged Hutchinson to keep the fact secret in order to protect him from prosecution. Accordingly, Hutchinson at first lied to the SEC. Eventually, however, Hutchinson convinced his friend to let him tell the SEC the truth. 534 A.2d at 921. Both Respondent and Hutchinson had long distinguished careers encompassing both government service and private practice. Neither had any prior disciplinary record. Also like Respondent, Hutchinson admitted his guilt, and showed great remorse. Despite these mitigating factors, however, Hutchinson was suspended for one year.

Other cases in which lesser sanctions have been given for violations of DR 1–102(A)(4) involved less serious, non-criminal conduct. For example, in *In re Reback*, 513 A.2d 226 (D.C.1986), two lawyers who filed a complaint with a forged client signature were suspended for only six months. This complaint was filed to replace one that had been dismissed because of their negligent inattention. The lawyers in *Reback* were not charged with or convicted of a crime. They were trying to restore their client to the position she would have been in but for their negligence. In contrast, Respondent made criminally false statements, and aided in the misuse of a birth certificate to obtain for his client something which she had no legal right to have—a U.S. passport, Respondent's conduct also put an innocent third party, Kathy Williams, at risk of a criminal investigation as an accomplice.

The Hearing Committee also cited *In re Gutjahr*, Bar Docket No. 278–79 (BPR Sept. 11, 1981), to support the imposition of a shorter suspension period. In that case, Gutjahr was reprimanded for conduct that on the surface seems similar to that of Respondent. Gutjahr was handling some immigration matters for a client who feared torture or execution if he was required to return to his country of origin, Chile. In the course of his representation, Gutjahr filled out an INS form representing that his client was unemployed. Although Gutjahr believed that the reference to his client's employment status was false, it was in fact true because the client's job would not start for a few weeks.

Gutjahr never filed the form with the INS, but did send a copy of it, along with a letter stating that it had been filed, to his client's employer. Gutjahr erroneously believed that the employer understood that the form would never be filed and that Gutjahr instead intended to seek political asylum for the client. Gutjahr thought that the employer simply needed the form for her files while the client waited for political asylum.

Since Gutjahr did not make any false statements to the INS, and did not intend to deceive the employer, none of his actions were either criminal violations or violations of DR 1–102(A)(4) (the reprimand was given because the letter contained a false statement in violation of DR 7–102(A)(5)). In contrast, Respondent made deliberate false statements that were intended to deceive the United States government and that were criminal. Consequently, Respondent's actions are more similar to those in *Thompson*, *Hutchinson*, and *Kerr*, than those in *Reback* and *Gutjahr*. The appropriate sanction is a one year suspension.

### III. *Reinstatement*

In any suspension order, the Court may impose a requirement that the attorney furnish proof of rehabilitation as a condition of reinstatement. D.C.Bar R. XI § 3(a)(2). No such condition is appropriate here. First, Respondent's transgression is only marginally practice-related. It is true that Mrs. Shahid was a client, but Respondent assisted her as a friend, and not in the course of his representation. Thus, there is little reason based on his misconduct to question Respondent's fitness.

Were Respondent required to show fitness, he would have to offer proof of five factors to obtain reinstatement:

(1) The nature and circumstances of the misconduct for which that attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since the discipline was imposed ...; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice.

*In re Roundtree,* 503 A.2d 1215, 1217 (D.C. 1985). The evidence presented at the hearing indicates that there is no reason to question Respondent's ability to satisfy these five factors. The circumstances surrounding his misconduct were such that "his heart carried his head." (Sentencing trial transcript at 3, 6.) His actions appear to be truly aberrational in light of his past exemplary conduct, and he has exhibited true remorse for his misdeeds. During his suspension he has spent many hours on community service work and has given no indication that he would be likely to repeat his dishonest conduct.

Respondent also appears to have the legal knowledge necessary for readmission to the bar. He has maintained his legal skills throughout his suspension by working as a law clerk for several area attorneys. Since respondent's activities indicate that he would meet the normal reinstatement requirements set out in *In re Roundtree,* no further showing of fitness is necessary. Under D.C.Bar R. XI, § 3(a)(2), whenever there is no condition on reinstatement, the attorney may resume practice at the end of the suspension period.

Respondent was suspended following his conviction of March 7, 1989. His one year suspension should be imposed *nunc pro tunc* to that date.

### CONCLUSION

For the reasons stated above, we recommend that Respondent Willard C. McBride should be suspended for one year, *nunc pro tunc* as of March 7, 1989.

Board on Professional Responsibility

by /s/ Hamilton P. Fox, III

Vice–Chair

All members of the Board concur in this Report and Recommendation except Mr. Donnenfeld, who is recused, and Mr. Center, who did not participate.

Dated: _____