**In re Leonard W. KROUNER,**
**Respondent.**

**A Member of the Bar of the District**
**of Columbia Court of Appeals.**

**No. 98–BG–446.**

District of Columbia Court of Appeals.

Submitted Jan. 19, 2000.
Decided March 30, 2000.

Leonard H. Becker, Bar Counsel at the time the brief was filed, and Michael S. Frisch, Senior Assistant Bar Counsel, were on the brief for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, was on the brief for the Board on Professional Responsibility.

Before WAGNER, Chief Judge, and TERRY and FARRELL, Associate Judges.

WAGNER, Chief Judge:

This reciprocal discipline matter is before the court on the recommendation of the Board on Professional Responsibility (Board) that Leonard W. Krouner be suspended from the practice of law in the District of Columbia for a period of thirty days. Krouner was censured in a disciplinary proceeding in the State of New York based upon his criminal conviction in that state for theft of services, in violation of New York Penal Law § 165.15(4), a class A misdemeanor, and upon findings that he violated Disciplinary Rules 1–1029(A)(4), (5) and (8) of the New York Code of Professional Responsibility. The Board recommends that we depart from the imposition of identical reciprocal discipline under Bar Rule XI, § 11(c)(4) of our local rules. Krouner objects to the imposition of substantially different discipline. He contends that: (1) his misconduct does not warrant sanctions greater than those imposed by the States of New York and Florida;[1] (2) the Board failed to consider mitigating circumstances; and (3) "the 'substantially different discipline' exception to the imposition of identical reciprocal discipline in D.C. Bar Rule XI, § 11(c)(4) and (f)(2) violates the United States Constitution, Article IV § 1, 28 U.S.C. § 1728 and the reciprocity principles for recognition of disciplinary judgments between states." For the reasons stated in this

Leonard W. Krouner, respondent, filed a brief pro se.

1. Based on the New York disciplinary findings, Krouner was issued an admonishment in Florida and required to pay administrative costs of $750.

opinion, we adopt the Board's recommendation.

## I.

### Factual and Procedural Background

Krouner was disciplined in the State of New York based on three unrelated matters. On July 25, 1991, he was convicted on charges of theft of services. The conviction arose out of Krouner's billing, without authorization, more than $900 in long distance telephone calls to the telephone of Toyota Motor Sales, USA, Inc., (Toyota) between August and September 1986. In June 1987, Toyota demanded reimbursement, and Krouner complied by the end of September 1987. In explanation of his actions, Krouner claimed that "at the time of these unauthorized billings he was a plaintiff in a Federal court class action lawsuit against Toyota and merely wanted to demonstrate Toyota's capacity to account for small financial transactions." In mitigation, he stated that he was "beset by very stressful personal problems during the relevant time period ... and that he has made positive and significant voluntary contributions to his community and his profession." He also provided a number of affidavits attesting to his good character.

Krouner's violations of New York's disciplinary rules arose out of his signing the names of two of his clients, who were co-executors of an estate, to a petition to extend preliminary letters testamentary on their behalf. Krouner had the document notarized and submitted it to the Albany County Surrogate Court. While admitting the violations, Krouner claimed in mitigation that "he was acting in good faith to ensure uninterrupted administration of the estate, the primary asset of which was a nursing home, and that he believed he had the co-executors' permission to sign their names to the petition." When he discover-

ed that he had acted without the authorization of his clients, "he took prompt action to have the petition declared null and void, settle[d] some disputes among three co-executors, waive[d] his right to any fees for his work on the estate, and cease[d] his further provision of legal services for the estate."

In considering the charges of misconduct and the evidence offered in mitigation thereof, the New York court found that "[i]t is clear that respondent acted unethically in signing the co-executors' names to the petition without their unambiguous authorization and that he acted inexcusably in notarizing the signatures and then submitting the fraudulent documents to the Surrogate." The court also found that Krouner's failure to file with the court a record of his 1991 criminal conviction violated New York's rules of professional conduct.[2] Based upon the three charges, the New York Court imposed the sanction of public censure.

Bar Counsel recommended to the Board identical discipline. In rejecting Bar Counsel's recommendation, the Board stated:

> This recommendation ... only considered reciprocal sanctions imposed pursuant to Rule XI, § 11(c), where there is a presumption of identical discipline. Bar Counsel did not address the issue of the appropriate sanction under Rule XI, § 10(d), where the sanction imposed is the result of a conviction of a serious crime. Moreover, in recommending identical reciprocal discipline, Bar Counsel did not acknowledge that there were several practice-related dishonesty violations occurring eight years apart or that [Krouner] was found to have engaged in conduct prejudicial to the administration of justice which adversely reflected on his fitness to practice law.

The Board recommended to this court a thirty-day suspension. The Board's rec-

---

**2.** The Board noted that it was unaware of any case in the District where failure to report a criminal conviction under Rule XI, §§ 10 &

11 was found to constitute professional misconduct.

ommended sanction was based on two separate provisions of Rule XI, specifically, § 10(d) providing for discipline upon convictions of a serious crime, and § 11 providing for reciprocal discipline. The Board determined that the minimum sanction for a misdemeanor conviction involving dishonest conduct is a thirty-day suspension. Further, the Board concluded that a thirty-day suspension "is at the lower end of the range of sanctions where there are two or more separate acts of dishonesty." In determining whether to apply the "substantially different discipline" exception of Rule XI, § 11(c)(4), the Board determined that "if this matter were before us on these facts as an original jurisdiction case, the very minimum recommendation would be a suspension of 30 days." The Board further concluded that the difference in the New York sanction of public censure and the original jurisdiction sanction of suspension "is substantial" and "that a public censure is outside the range of sanctions for [Krouner's] misconduct for purpose of reciprocal discipline."

## II.

### Analysis

Krouner objects to the Board's recommendation, essentially arguing that imposition of the Board's sanction would result in grave injustice. *See* Rule XI, § 11(c)(3). Specifically, Krouner argues that the Board erred in concluding that his conviction for a theft crime is by definition a "serious crime" under Rule XI, § 10(d) and that the Board did not weigh the facts "indicating that [he] did not intend to avoid payment for the telephone calls or to benefit personally from signing and notarizing his clients' names." Krouner further argues that the cases relied upon by the Board in determining the severity of the sanction are distinguishable. Krouner also contends that his conduct does not warrant "substantially different" discipline.

District of Columbia Bar Rule XI, § 11(c) "creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." [3] *In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992) (citing *In re Velasquez*, 507 A.2d 145, 146–47 (D.C.1986) (per curiam)). The court may impose different discipline where "'the Court finds on the face of the record on which the discipline is predicated, by clear and convincing evidence,' that one or more of the specifically enumerated exceptions set forth in § 11(c) exists." *In re Garner*, 576 A.2d 1356, 1357 (D.C.1990) (citing D.C. Bar R. XI, § 11(f)).[4] Where a

3. D.C. Bar Rule XI, § 11(c) provides that:

Reciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence, that:
(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
(2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or
(3) The imposition of the same discipline the Court would result in grave injustice; or
(4) The misconduct established warrants substantially different discipline in the District of Columbia; or
(5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

4. D.C. Bar R. XI, § 11(f) provides as follows:

Action by the Court. (1) When no opposition to the recommendation of the Board has been timely filed, and when the Court does not direct that the matter be considered under paragraph (2) of this subsection, the Court will enter an order imposing the discipline recommended by the Board upon the expiration of the time permitted for filing an opposition.
(2) In matters not falling under paragraph (1) of this subsection, the Court shall impose the identical discipline unless the attorney demonstrates, or the Court finds on the face of the record on which the discipline is predicated, by clear and convincing evidence, that one or more of the grounds set forth in subsection ([c]) of this section exists. If the Court determines that the identical discipline should not be imposed, it shall enter such order as it deems appropriate, including referral of the mat-

greater sanction is sought, "the record must affirmatively show that the greater sanction is warranted." *Zilberberg,* 612 A.2d at 835 (citing *In re Reid,* 540 A.2d 754 (D.C.1988), and *In re Larsen,* 589 A.2d 400 (D.C.1991)).

■ Here, the Board's recommendation for the imposition of a greater sanction is based on the "substantially different discipline" exception set forth in § 11(c)(4) of Rule XI. Where that exception forms the basis for the recommendation, we undertake a two-step inquiry which includes: (1) whether the "misconduct in question would not have resulted in the same punishment here as it did in the disciplining jurisdiction," and (2) where discipline in this jurisdiction would be different, "whether the difference is substantial." *Garner, supra,* 576 A.2d at 1357 (citations omitted). In considering the first step in this inquiry, "the question is whether the discipline of the foreign jurisdiction is within the range of sanctions that would be imposed for the same misconduct." *Id.* (citing *In re Hirschberg,* 565 A.2d 610, 614 (D.C.1989); *In re Reiner,* 561 A.2d 479, 482 (D.C.1989)). We find no error in the Board's conclusion that it is not.

### A. Sanction Under Rule XI, § 10

Krouner was convicted of theft of services based on his placing over $900 in unauthorized long distance calls to the account of Toyota. Such conduct is subject to sanction in this jurisdiction under Rule 8.4(c) of the Rules of Professional Conduct, which states that it is professional misconduct for a lawyer to "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation ." Cases in this jurisdiction support the imposition of a thirty-day suspension for a misdemeanor conviction for a crime involving dishonesty as the minimum sanction, as the Board concluded. In *In re Rushfield,* 721 A.2d 167 (D.C.1998), for example, a thirty-day suspension was imposed where the respondent was convicted of three misdemeanors relating to ERISA reporting requirements, in violation of 29 U.S.C. § 1131. *Rushfield* was a reciprocal discipline case in which the Board concluded that substantially different discipline from that imposed in New Jersey (reprimand) and New York (public censure) was warranted. In *In re Kent,* 467 A.2d 982 (D.C.1983), a thirty-day suspension was imposed where the attorney was convicted of taking property without right even though the criminal conduct was found to be related to psychological problems and not an intent to steal. Thus, it appears that if Krouner had been convicted of a crime involving dishonesty in the District, the minimum sanction would have been a thirty-day suspension.[5]

Krouner seeks to distinguish his misconduct from that involved in these cases, arguing that, in spite of the conviction, he lacked an intent to steal. However, other cases in this jurisdiction resulted in a thirty-day suspension for similar misconduct where there were similar mitigating factors. For example, in *Kent, supra,* the respondent was suspended for thirty days for violating Disciplinary Rule 1–102(A)(4) (engaging in conduct involving dishonesty, deceit, fraud and misrepresentation). 467 A.2d at 983. The attorney in *Kent,* who previously had an unblemished professional record, had a history of personal and emotional problems which required psychiatric treatment. After she discontinued

---

ter to the Board for its further consideration and recommendation.

**5.** There have been cases in which this court has imposed longer periods of suspension upon conviction for similar crimes involving dishonesty. *See In re Phillips,* 705 A.2d 690 (D.C.1998) (sixty-day suspension for filing a false and misleading sworn petition in federal court which resulted in a criminal contempt conviction); *see also In re Cerroni,* 683 A.2d 150 (D.C.1996) (one-year suspension for knowingly making and submitting a false statement and report to HUD and FHA resulting in a criminal conviction); *In re McBride,* 642 A.2d 1270 (D.C.1994) (one-year suspension for aiding and abetting passport fraud and signing a false statement resulting in a criminal conviction).

treatment, she went into a department store and openly stuffed merchandise in her briefcase and purse. She ultimately pleaded guilty to a misdemeanor charge of taking property without right for this offense. This court found that the record supported the Board's finding that the misconduct involved dishonesty within the meaning of the disciplinary rule, but not moral turpitude, given the unusual circumstances which indicated "that respondent's actions were prompted by a neurotic desire to be caught rather a desire for personal profit." 467 A.2d at 984. This court imposed a thirty-day suspension for this single instance of misconduct, unrelated to the practice of law, given the nature of the behavior.[6] Moreover, in Krouner's case, the New York court did not find specifically that he lacked an intent to steal nor that he intended to repay Toyota as he argues.

Relying on *In re Abrams,* 689 A.2d 6 (D.C.) (en banc), *cert. denied,* 521 U.S. 1121, 117 S.Ct. 2515, 138 L.Ed.2d 1017 (1997), Krouner argues that censure is within the range of sanctions available for conduct involving dishonesty resulting in criminal conviction. This argument is unpersuasive. In *Abrams,* the respondent was pardoned by the President for giving false but unsworn testimony to Congress which resulted in a guilty plea to criminal charges. The en banc court censured respondent because there was no other sanction which could command a majority.[7] In imposing censure, the court explained that

> [u]nder the unusual circumstances here presented, and solely in order to enable the court to dispose of the case, the four judges who believe that Abrams should be suspended from practice have agreed that the sanction [of public censure as]

proposed by Judge King should be imposed.

*Id.* at 19. Therefore, it cannot be fairly said that *Abrams* supports censure as a sanction for criminal convictions based on conduct involving dishonesty.

### B. *Sanctions Under Rule XI, § 11*

In the District, the sanctions for disciplinary violations involving misrepresentation or the filing of false notarizations with the court, absent criminal conviction, range from informal admonition to suspension. *See In re Confidential (JEK),* D.N. 235–78 (BPR Nov. 29, 1979) (informal admonition for submission of an affidavit with a false notarization to the court); *In re Sudderth,* D.N. 329–97 (BPR July 23, 1998) (reprimand for the execution of a false jurat). In *In re Reback,* 513 A.2d 226 (D.C.1986) (en banc), two attorneys were suspended for six months for filing a divorce complaint knowing that the client's signature had been forged. The attorneys caused the second complaint to be filed without the client's knowledge after the first had been dismissed pursuant to Super. Ct. Dom. Rel. R. 41(d) (case not at issue within six months after its filing date shall be dismissed after notice to the attorneys). This court has imposed suspensions in both original jurisdiction matters and reciprocal discipline cases involving misrepresentation and forgery. *See, e.g., In re Rosen,* 481 A.2d 451 (D.C.1984) (thirty-day suspension for misrepresentation on three separate occasions in pleadings filed with the court); *see also In re Garner,* 611 A.2d 969 (D.C.1992) (six-month suspension as reciprocal discipline for supplying and notarizing alias names of adoptive parents in an adoption matter).

6. *Cf. In re Schneider,* 553 A.2d 206 (D.C.1989) (thirty-day suspension for knowing and conscious decision to physically alter receipts and to submit the false claims for payment in the absence of finding of an intent to deceive and criminal conviction).

7. Three judges were of the opinion that Abrams should be suspended for six months. One judge would have adopted the Board's recommendation of a one-year suspension. Four judges were of the opinion that the presidential pardon precluded the imposition of any sanction. *Abrams, supra,* 689 A.2d at 19.

Krouner argues that his actions in filing the falsified complaint are distinguishable from those of the attorneys in *Phillips, Reback,* and *Rosen.* He contends that he acted in good faith in signing and falsely notarizing the signatures of his clients to a document and submitting the document to the court. However, the New York court did not make a finding that Krouner acted in good faith. While acknowledging respondent's good faith argument, the New York court stated that "[i]t is clear that respondent acted unethically in signing the co-executors names to the petition without their unambiguous authorization and that he acted inexcusably in notarizing the signatures and then submitting the fraudulent document to the Surrogate." Under the circumstances, the Board could conclude fairly that the sanction in New York was outside the range of comparable sanctions for similar misconduct.

In summary, in this jurisdiction the minimum discipline for a conviction of a serious crime (including one marked by dishonesty) is a thirty-day suspension. A thirty-day suspension for unauthorized signing of clients' names to a document, then submitting that document to the court, is at the low end of the range of sanctions. Citing *In re Goffe,* 641 A.2d 458 (D.C.1994), Krouner argues that this court has rejected the proposition that case precedents establish minimum and maximum sanctions for future cases. He contends that appropriate discipline should be determined based upon: (1) the nature of the violation; (2) mitigating and aggravating circumstances; (3) the need to protect the public; and (4) the moral fitness of the attorney. *See id.* at 464 (citations omitted). In rejecting the Board's recommended sanction of a one-year suspension and imposing the sanction of disbarment in *Goffe,* this court indeed stated that the prior cases relied upon were not intended to establish a ceiling for sanction of an attorney who had engaged in dishonest conduct. However, we adhered to the principle that "decisions of this court can serve as overall guidelines to assist in defining the permissible range of sanctions." *Id.* at 464. In *Goffe,* we noted that the absence of a case which had previously imposed discipline greater than one year simply evidenced that the cases provided no prior example of attorney dishonesty of the magnitude which occurred in *Goffe. Id.* Thus, applying the factors cited by Krouner here, the court in *Goffe* rejected the Board's recommendation for a lesser sanction based upon the particular circumstances of the case. *Id.* In Krouner's case, the Board properly applied prior decisions in determining the permissible range of sanctions for the misconduct involved.[8]

### C. The "Substantially Different Discipline" Exception

■ Krouner argues that his misconduct does not warrant different discipline than that imposed by New York. Under D.C. Bar Rule XI, § 11(f)(2), reciprocal discipline will be imposed " 'unless the attorney demonstrates, or the Court finds on the face of the record on which the discipline is predicated, by clear and convincing evidence' that one or more of the specifically enumerated exceptions set forth in § 11(c) exists." *Garner, supra,* 576 A.2d at 1357 (quoting D.C. Bar Rule XI, § 11(f)(2)). In this case, the Board recommends application of the exception in D.C. Bar Rule XI, § 11(c)(4), which provides for a different sanction where the misconduct warrants substantially different discipline in the District of Columbia. In determining whether the exception applies, we determine first whether the misconduct would have resulted in the same punishment in the District as it did in New York. *Garner,* 576 A.2d at 1356 (citation omitted). A survey of our cases shows that a thirty-day suspension for two instances of dishonesty, one of which resulted in crimi-

---

8. We are not persuaded that the Board failed to apply properly the relevant factors for determining the sanction that would be imposed for similar misconduct in the District of Columbia.

nal conviction, is the minimum sanction which would be imposed in the District. Having determined that the sanction for the misconduct under consideration would have been different, the next step is whether the difference in sanction is substantial. *See id.* We agree with the Board that the difference between a suspension, which this jurisdiction would impose, and a public censure, which New York imposed, is substantial. As Krouner points out, suspension is license-impairing, while censure is not. Since the discipline that would have been imposed here is substantially different, the exception in Rule XI, § 11(c)(4) is applicable.

■ Krouner argues that the Board failed to consider mitigation evidence in making its recommendation. A review of the record shows otherwise. The Board recognized Krouner's claim that he lacked the intent to steal and that he was under family stress at the time. With regard to the submission of falsely notarized signatures, the Board noted Krouner's statement that "he took prompt action to have the petition declared null and void, settled certain disputes involving the co-executors and waived his right to any fees for his work on the estate."

■ Finally, relying on "full faith and credit" principles, Krouner argues that Bar Rule XI, § 11(c)(4) and § 11(f)(2) should be declared unconstitutional as en·acted and applied. We rejected a similar argument in *Reid, supra,* 540 A.2d 754. There we stated that

> [a]lthough we are mindful of the fact that "there is merit in the idea of granting due deference—for its sake alone—to the opinions and actions of a sister jurisdiction with respect to attorneys over whom we share supervisory authority," *Velasquez,* [*supra*], 507 A.2d [at] 147, we are obligated first to honor the policies of this jurisdiction.

*Reid,* 540 A.2d at 759 n. 6. Nothing in the Constitution requires blind conformity between the standards for attorney discipline adopted by different jurisdictions. Accordingly, it is hereby

ORDERED that respondent, Leonard W. Krouner, be, and hereby is suspended from the practice of law for thirty days, effective thirty days from the entry of this opinion. Respondent's attention is directed to the requirements of D.C. Bar Rule XI, § 14 relating to suspended attorneys.

*So ordered.*