**In re Robert J. SHERIDAN**

**A Member of the Bar of the District of Columbia.**

No. 00–BG–46.

District of Columbia Court of Appeals.

Argued Jan. 29, 2002.

Decided April 18, 2002.

Robert J. Sheridan, pro se.

Traci M. Tait, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before SCHWELB, RUIZ and WASHINGTON, Associate Judges.

RUIZ, Associate Judge:

This reciprocal discipline matter was initiated by the Office of Bar Counsel for the District of Columbia ("Bar Counsel"), which informed this court in accordance with District of Columbia Bar Rule XI, § 11(b) that the Maryland Court of Appeals had indefinitely suspended respondent Robert J. Sheridan from the practice of law in Maryland. In an order dated February 4, 2000, we temporarily suspended respondent from practicing law in the District of Columbia pursuant to District

of Columbia Bar Rule XI, § 11(d) and directed the Board on Professional Responsibility ("Board") to recommend whether identical, lesser, or greater discipline should be imposed. The Board subsequently issued a report on April 25, 2001, recommending that the greater sanction of disbarment should be applied to Sheridan under Rule XI, § 11(c)(4), given that Sheridan's actions in Maryland amounted to misappropriation warranting disbarment in this jurisdiction under our holding in *In re Addams*, 579 A.2d 190, 191 (D.C.1990) (en banc). Bar Counsel supports this recommendation, while Sheridan challenges the Board's conclusions. We agree with the Board that *Addams* controls under the facts set forth by the Maryland Court of Appeals, and therefore adopt the Board's recommendation that Sheridan be disbarred.

## I.

Sheridan was admitted to the Bar of the District of Columbia in 1977, and had also been admitted to practice in Maryland and Virginia. His license to practice law in Virginia was revoked when he petitioned the Virginia State Bar Disciplinary Board in March 1994 for leave to surrender his license because he faced allegations of misconduct. We imposed reciprocal discipline in *In re Sheridan*, 680 A.2d 439 (D.C.1996),

revoking his license to practice law in the District on July 25, 1996, "with leave to apply for reinstatement after reinstatement in Virginia is granted, or after the expiration of five years, whichever of these events occurs earlier." *Id.* at 440. Sheridan is eligible to apply for reinstatement but had not petitioned for reinstatement in Virginia as of the time of the proceeding before the Board or argument before this court.[1]

### A. Maryland proceedings

The events which led to the suspension of Sheridan's license in Maryland were fully explored in an evidentiary hearing before Circuit Court Judge Theresa A. Nolan, whose findings of fact and conclusions of law were adopted by the Maryland Court of Appeals. *See Attorney Grievance Comm'n v. Sheridan*, 357 Md. 1, 741 A.2d 1143 (1998). We defer to findings of fact made by other courts in reciprocal proceedings. *See* D.C. Bar R. XI, § 11(c) ("[A] final determination by a disciplining court outside the District of Columbia or by another court in the District of Columbia that an attorney has been guilty of professional misconduct shall conclusively establish the misconduct for the purpose of a reciprocal disciplinary proceeding in this Court.")[2]

---

**1.** When Virginia revoked Sheridan's license in 1994, the rule was that he could apply for reinstatement at any time. *See* Va. Sup.Ct. R. Pt. 6, § IV, para. 13(H). In 2000, the rule was changed to preclude reinstatement petitions for five years from the date of revocation. *See* Va. Sup.Ct. R. Pt. 6., § IV, para. 13(J)(I).

**2.** Repeating attacks against the Maryland courts that were raised in the Maryland proceedings, Sheridan asserts that the conclusions of the Maryland Court of Appeals are unsupported by the factual record in the case, and that the Maryland Court of Appeals "defied all facts, law, and logic in straining to

establish 'dishonesty'... and thus 'knowing' and 'intentional misappropriation.'" This argument fails, as it is merely an attempt to relitigate the facts already determined in Maryland. Our role in reciprocal discipline cases is different from that in disciplinary matters originated in our own jurisdiction. *See In re Velasquez*, 507 A.2d 145, 146 (D.C.1986). First, "[t]here is no need for a de novo repetition of the entire process, and the burden of persuasion is reversed," and "[s]econd, there is merit in the idea of granting due deference—for its sake alone—to the opinions and actions of a sister jurisdiction with respect to attorneys over whom we share supervisory authority." *Id.* at 147. We will not disturb

The facts, as found by the court in Maryland, are that in January 1991, Sheridan was employed by I.H. Hershner Company, Inc. ("Hershner") to collect debts owed to it. *See Sheridan,* 741 A.2d at 1146–47. He was specifically assigned to six debts, one of which was owed to Hershner by RDP Enterprises ("Perry"). *See id.* at 1147. Hershner filed for bankruptcy under Chapter 11 in Pennsylvania on March 19, 1991. *See id.* Despite notification by Hershner's bankruptcy counsel of the bankruptcy proceeding, Sheridan continued to press litigation against Perry in Virginia to collect on Hershner's account. *See id.*

An Order of Settlement was entered on January 31, 1992 in Fairfax County, Virginia on behalf of Hershner in connection with the Perry debt. *See id.* Hershner received judgment in the amount of $9,161.40, in addition to $1,035.58 in interest and $1,832.28 in attorneys' fees. *See id.* Perry was ordered to pay these amounts in twenty-one installments of $450 each by checks made payable to Sheridan as the attorney for Hershner. *See id.* Sheridan received two checks for $450 and deposited them into his escrow account. *See id.* He did not notify Hershner of either the settlement or the receipt of these checks, and later withdrew these deposited funds in payment of his services on behalf of Hershner. *See id.*

In a letter dated May 13, 1992, Hershner's bankruptcy counsel informed Sheridan that he was no longer authorized to represent Hershner, requested the return of all files, and ordered him to cease any further legal action on behalf of Hershner.

*See id.* Hershner was not aware of the Order of Settlement with Perry at this time. *See id.* When Hershner did learn of the Settlement some time later in 1992 from a source other than Sheridan, Hershner's administrative manager wrote to Sheridan confirming this knowledge and requesting that Sheridan forward the money received from Perry. *See id.* at 1147–48. Sheridan did not forward the funds, claiming later that he had been instructed by Hershner to retain the money for outstanding legal fees owed by Hershner to Sheridan. *See id.* at 1148.

Nearly two years later, on March 2, 1994, Allied Products, Inc. ("Allied") and Hershner entered into an asset purchase agreement under which Allied would buy substantially all of Hershner's assets, including any receivables that were written off and had no book value. *See id.* The agreement was approved by a bankruptcy court on March 14, 1994, and the Hershner bankruptcy proceeding was dismissed on November 4, 1994. *See id.*

On March 7, 1995, contrary to the directive of Hershner's bankruptcy attorney, Sheridan wrote to Perry demanding resumption of the payments of $450 a month due to Hershner and threatening to file to enforce the Virginia Order of Settlement in Maryland if Perry, a business that had offices in Maryland, did not comply. *See id.* Sheridan explained that he had put the Hershner file on hold when Hershner had filed for bankruptcy, but because the bankruptcy case was dismissed in November 1994, he now felt free to pursue the case. *See id.* When Perry failed to re-

the findings of the Maryland Court of Appeals here where it (1) found by "clear and convincing evidence that, at the time he acted, Sheridan knew or should have known that his actions were unethical" and (2) concluded, based on Sheridan's misrepresentations to Perry, that he "acted dishonestly." *See also*

*In re Benjamin,* 698 A.2d 434, 440 (D.C.1997) ("Under principles of collateral estoppel, in reciprocal discipline cases we generally accept the ruling of the original jurisdiction, even though the underlying sanction may have been based on a different rule of procedure or standard of proof.")

spond, Sheridan wrote a second letter to Perry demanding that the balance of $16,733.74 owed to Hershner be paid no later than October 25, 1995, with checks payable to him as Hershner's attorney. *See id.* Three checks in the amount of $450 and one check in the amount of $900 were then issued by Perry to Sheridan in March, May, July and August of 1995. *See id.* None of these checks was put into either an escrow account for Hershner or a separate account for client's funds. *See id.* Sheridan admitted using these funds on professional and personal expenditures, and did not notify either Hershner or Allied of their receipt. On October 29, 1995, Sheridan wrote a final letter to Perry stating that he and Hershner would be willing to accept $12,000 payable in three equal installments as satisfaction for the original Offer of Settlement.[3] *See id.*

Concerned that Allied was not receiving the funds it had paid on account of the receivables Allied had purchased from Hershner, Perry faxed a copy of Sheridan's letter and attachments to Allied on October 27, 1995 to inform them of Sheridan's conduct. *See id.* Allied was unaware until that point that Sheridan had received any funds from Perry. *See id.*

In November of 1995, Sheridan wrote to Allied and indicated that he felt he had been unfairly treated by Hershner, justified his retention of the funds received from Perry on the grounds that Hershner had abandoned all legal claims to the money, and claimed he had a lien on the proceeds because Hershner owed him attorneys' fees. *See id.* at 1148–49. He stated he did not inform Hershner of the money he had received because he thought Hershner had ceased to exist and because

he believed Hershner was not owed any money, and argued that his retainer agreement with Heshner clarified his (Sheridan's) ownership interest in the money. *See id.* at 1149. Allied responded that it had purchased Hershner's assets free and clear of Hershner's liens and that the money received by Sheridan was Allied's property. *See id.* Allied directed Sheridan to give a full accounting of collections since March of 1994 and to cease any further collection activity. *See id.* Moreover, Allied claimed there was no evidence of a retainer agreement. *See id.* After Sheridan continued to refuse to return the disputed funds, Allied made an offer of settlement which Sheridan rejected. *See id.*

Addressing Sheridan's state of mind, Judge Nolan stated that:

> [t]he Court observed that Sheridan truly believed that the money was legally his. Further, the Court believes that [Sheridan's] actions were not motivated by any decision to intentionally defraud Allied or Hershner. [Sheridan's] decision to retain the funds however, defrauded Allied and/or Hershner of its legal claim to the settlement money.

*Id.*

Based on these facts, Judge Nolan found that Sheridan had violated Maryland Rules of Professional Conduct 1.15(a) (failure to keep collected funds separate), 1.15(b) (failure to notify client of funds received), 1.15(c) (failure to keep disputed funds separate until dispute resolved), and 8.4(c) (dishonesty, fraud, deceit or misrepresentation), as well as the Business Occupations and Professions Article ("BOP") § 10–306 (willful removal of funds for pro-

---

**3.** In the letter, Sheridan wrote:
> The $450/month deal is off, but *Hershner and I* will agree to accept in full and final satisfaction of your Virginia judgment obli-

gation, further payments totalling [*sic*] Twelve Thousand Dollars ($12,000.00).
*Id.* at 1157 (emphasis added).

fessional or personal use). *See id.* at 1149–50.

The Maryland Court of Appeals, after determining that Sheridan's allegations of judicial prejudice were "baseless," concluded that Sheridan had been fully afforded an opportunity to present his case, and upheld Judge Nolan's findings as supported by clear and convincing evidence.[4] *See id.* at 1150–52. Turning to the issue of sanctions, the Maryland Court of Appeals considered factors articulated in *Attorney Grievance Comm'n v. Glenn*, 341 Md. 448, 671 A.2d 463 (1996). In examining Sheridan's state of mind under *Glenn*, the Maryland Court of Appeals reasoned that while his actions were not intentionally fraudulent, there was clear and convincing evidence that Sheridan "knew or should have known that his actions were unethical." *Sheridan*, 741 A.2d at 1158.

### B. District of Columbia proceedings

Upon its consideration of the case, the Board determined that due process had been satisfied in the Maryland proceedings as Sheridan was "present, cross-examined witnesses, and testified," and did not demonstrate that he was denied the opportunity to present evidence. The Board went on to conclude, however, that Sheridan's misconduct warranted substantially different discipline in the District of Columbia

under Rule XI, § 11(c)(4) because the facts set forth by the Maryland Court of Appeals established that Sheridan's misappropriation of funds was "knowing" and not simply negligent, requiring disbarment under *Addams*. Moreover, the Board noted that the Maryland Court of Appeals did not take into consideration Sheridan's record of prior discipline in the District of Columbia, which was "further confirmation of the need for an increased sanction here." On this basis, the Board recommended that Sheridan be disbarred.

### II.

"In reciprocal disciplinary cases the level of deference accorded Board recommendations is less than in original proceedings." *In re Zelloe*, 686 A.2d 1034, 1036 (D.C.1996). That is because Rule XI, § 11(c) "creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction," *In re Krouner*, 748 A.2d 924, 927 (D.C.2000) (quoting *In re Zilberberg*, 612 A.2d 832, 834 (D.C. 1992)), unless the record affirmatively shows that a different sanction is warranted, *see Zilberberg*, 612 A.2d at 835.[5] Where Bar Counsel, the Board or the respondent makes such a showing, this court has authority under District of Columbia

---

4. In discussing the violation of Rule 8.4(c), the Maryland Court of Appeals overruled Judge Nolan's conclusion that Sheridan "defrauded Allied and/or Hershner of its legal claim to the settlement money" because it was unable to reconcile this conclusion with the judge's observation that Sheridan did not intentionally defraud Allied or Hershner. *See Sheridan*, 741 A.2d at 1156. Nevertheless, the Maryland Court of Appeals concluded that Sheridan violated Rule 8.4(c) because there was "clear and convincing evidence that [Sheridan] exhibited a lack of probity, integrity and straightforwardness in his conduct regarding his client, and, therefore, his actions were dishonest in that sense." *Sheridan*, 741

A.2d at 1156–57. In reaching its conclusion, the Maryland Court of Appeals relied on this court's interpretation of the identically-worded D.C. disciplinary rule. *See id.* at 1156 (citing *In re Shorter*, 570 A.2d 760, 768 (D.C. 1990)).

5. District of Columbia Bar Rule XI, § 11(c) provides in relevant part that:

> [r]eciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence, that:
> (4) The misconduct established warrants substantially different discipline in the District of Columbia.

Bar Rule XI, § 11(f)[6] to impose a greater sanction than that imposed in the other jurisdiction. *See In re Dietz*, 653 A.2d 854, 855 (D.C.1995) (citing *In re Drury*, 638 A.2d 60, 62 (D.C.1994)).

In determining whether imposition of a different sanction is warranted under the exception set forth in Rule XI, § 11(c)(4), we undertake a two-step inquiry, "(1) whether the 'misconduct in question would not have resulted in the same punishment here as it did in the disciplining jurisdiction,' and (2) where discipline in this jurisdiction would be different, 'whether the difference is substantial.'" *Krouner*, 748 A.2d at 928 (quoting *In re Garner*, 576 A.2d 1356, 1357 (D.C.1990)). In considering the first step of this inquiry, we examine whether the discipline imposed by the foreign jurisdiction is within the range of sanctions that would be imposed for the same misconduct in this jurisdiction. *See id.*

Sheridan essentially argues that the misconduct established in Maryland (1) warrants a downward departure in the District from the suspension imposed in Maryland, and (2) does not warrant the imposition of the greater discipline of disbarment. He claims that he falls within the limited exception to the application of the *Addams* disbarment rule in cases of misappropriation in "extraordinary circumstances," 579 A.2d at 191, because he is being disciplined "for failing to protect third persons that do not even exist or that, after reasonable inquiry, are confirmed to not exist." He also asserts that if his alleged misconduct had originated in the District, there would have been no finding of misconduct or no more than a finding of simple negligence, referring to several cases involving simple negligence, including *In re Haar*, 698 A.2d 412 (D.C. 1997). In this regard, he asserts that the Board did not fulfill its obligation to go beyond the mere labels and four corners of the foreign disciplinary order to do some sort of factual inquiry, and therefore has not satisfied its burden to justify an upward departure by clear and convincing evidence.

We consider first whether Sheridan's misconduct, which was punished by indefinite suspension in Maryland, would have resulted in the same discipline in this jurisdiction. We adopt the findings of fact of the Maryland Court of Appeals, which show that in 1992 Sheridan failed to keep $900 in funds received from Perry separate, failed to notify Hershner that such funds had been received, and·withdrew the deposited funds as payment for·professional services. Sheridan then ordered Perry to resume payments in 1995, thus representing that he still had authority to do so as Hershner's attorney, notwithstanding the directions to the contrary from Hershner's bankruptcy attorney. When Sheridan later received $2,250 from Perry, he again failed to notify either Allied or Hershner of his receipt of the funds and again used these funds to pay himself. Finally, he attempted to reach a settlement with Perry without Hershner's permission, failed to give Allied a full accounting of collections since Allied acquired the

---

**6.** District of Columbia Bar Rule XI, § 11(f)(2) provides that, where opposition to the recommendation of the Board has been filed,

the Court shall impose the identical discipline unless the attorney demonstrates, or the Court finds on the face of the record on which the discipline is predicated, by clear and convincing evidence, that one or more of the grounds set forth in [§ 11(c)] exists. If the Court determines that the identical discipline should not be imposed, it shall enter such order as it deems appropriate, including referral of the matter to the Board for its further consideration and recommendation.

receivables in March 1994, and failed to keep the funds he received separate from his own accounts. While the Maryland Court of Appeals concluded that his actions were not intentionally fraudulent, it concluded that he "knew or should have known that his actions were unethical." *Sheridan*, 741 A.2d at 1158.

■■■■ Our case law has established the definition of misappropriation as "any unauthorized use of [a] client's funds entrusted to [the attorney], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Chang*, 694 A.2d 877, 880 (D.C.1997) (quoting *In re Harrison*, 461 A.2d 1034, 1036 (D.C.1983)); *see also* D.C. Code of Professional Conduct 1.15(a). In considering misappropriation cases, we held in *Addams* that:

> in virtually all cases of misappropriation, disbarment will be the only appropriate action unless it appears that the misconduct resulted from nothing more than simple negligence. While eschewing a per se rule, we adhere to the presumption laid down in our prior decisions and shall regard a lesser sanction as appropriate only in extraordinary circumstances.

*Addams*, 579 A.2d at 191. We additionally stated that "as a matter of course, the mitigating factors of the usual sort ... will suffice to overcome the presumption of disbarment only if they are especially strong and, where there are aggravating factors, they substantially outweigh any aggravating factors as well." *Id.*

There is no question that Sheridan's conduct constituted misappropriation here, where he failed to inform Hershner of the receipt of funds from Perry and then used these client funds to pay for his services. This misappropriation of Hershner's and/or Allied's funds was found by the Maryland courts to be knowing and dishonest.[7] When we consider, in addition, Sheridan's history of prior discipline in the District and in Virginia, disbarment is warranted in this jurisdiction.[8] *See id.; see also In re Thomas*, 740 A.2d 538 (D.C. 1999) (disbarment for commingling personal and client funds, misappropriation, dishonesty, and failing to inform third party that settlement funds had been received to which third party was entitled). No extraordinary circumstances exist on the facts here to justify an exception to the *Addams* rule.[9] That Maryland did not

---

7. While the Maryland Court of Appeals recognized that "[p]roving a state of mind,—here knowledge—poses difficulties in the absence of an outright admission," *Sheridan*, 741 A.2d at 1159 (quoting *Glenn*, 671 A.2d at 481), it had "far less difficulty [than in *Glenn*] in determining that [Sheridan] knowingly failed to notify his client of the receipt of funds, failed to provide an accounting to Allied when requested, and failed to keep the funds separate during the disputes over the monies in 1992 and 1995." *Sheridan*, 741 A.2d at 1159.

8. Sheridan's reliance on *Haar* and similar cases involving simple negligence is misplaced. In *Haar*, for example, the court described the lawyer's misappropriation as based on "a lawyer's good faith, negligent mistake of established law and on his good faith, negligent failure to address a controlling question of fact." *Haar*, 698 A.2d at 422. The present case involves Sheridan's *knowing* and dishonest conduct in misappropriating funds, and is therefore distinguishable.

9. We are not persuaded that Sheridan's actions were less reprehensible because Sheridan claims he believed that Hershner had ceased to exist as a corporate entity in 1994 as a result of the bankruptcy proceeding. First, we note that in 1992, two years *before* Hershner sold its assets to Allied, Sheridan received, failed to disclose and used $900 given by Perry in payment of amounts owed to Hershner. Second, even *after* Sheridan had been advised that Hershner was in bankruptcy and should cease to represent it, Sheridan wrote to Perry in 1995 representing

disbar Sheridan is of less consequence in a reciprocal discipline case involving misappropriation if the original disciplinary jurisdiction does not have an equivalent *Addams* rule for misappropriation cases. *See Krouner,* 748 A.2d at 928.[10]

Turning to the second prong of our inquiry, disbarment is by definition a substantially more severe sanction than the indefinite suspension imposed by Maryland. The Maryland Court of Appeals ordered that Sheridan be "indefinitely suspended from the practice of law" with the right to reapply for reinstatement after one year from the date of suspension. This court has viewed the Maryland sanction of indefinite suspension with the right to reapply for reinstatement after a period of time "as the functional equivalent of a suspension for the length of time before the right to reapply is permitted, plus a requirement of fitness." *In re Berger,* 737 A.2d 1033, 1039 n. 10 (D.C.1999) (quotations omitted). In contrast, in the District a disbarred attorney "not otherwise ineligible for reinstatement may not apply for reinstatement until the expiration of at least five years from the effective date of

disbarment." D.C. Bar R. XI, § 16(a). A four-year difference is substantial.

Because *Addams* requires disbarment in this case of misappropriation, which is a substantially different sanction than indefinite suspension with the opportunity to reapply after one year, we adopt the Board's recommendation that a more severe sanction is warranted than that imposed by the Maryland Court of Appeals. *See In re Drury,* 683 A.2d 465, 469 (D.C. 1996). Accordingly, it is hereby ordered that Sheridan be disbarred from the practice of law in the District of Columbia, effective thirty days after the entry of this order. *See* D.C. Bar R. XI, § 14(f) and (g).

*So ordered.*

---

himself as acting on Hershner's behalf. See *supra* note 3. Third, whatever the merits of Sheridan's claim to the money he received from Perry, even if he thought that Hershner had ceased to exist, he was aware that Hershner had been in bankruptcy proceedings involving creditors other than himself. Sheridan had an obligation to make some effort to determine whether anyone else had a claim to Hershner's accounts receivable. The Maryland Court of Appeals expressly noted that it could not accept Sheridan's suggestion that he was "somehow immunized from his ethical duties ... because he lacked knowledge of the existence of Allied," given the affirmative duties imposed by the rule requiring prompt notification upon receipt of client funds. *Sheridan,* 741 A.2d at 1154. As the court also noted, Sheridan knew enough to be "on notice to discern the legal status of his client ... and did not check his facts before churning the judgment execution wheels against Per-

ry." *Id.* at 1155. Finally, after the bankruptcy, when Allied informed Sheridan of its ownership of Hershner's accounts receivable, Sheridan nonetheless refused to recognize Allied's interest and provide an accounting.

10. The Maryland Court of Appeals found mitigating circumstances which justified a lesser sanction than disbarment, including Sheridan's acknowledgment that his conduct in dealing with Hershner in 1991 and 1992 was unethical, the fact that Hershner no longer existed at the time of the hearing before Judge Nolan, and Judge Nolan's finding that Sheridan did not act intentionally when he violated his ethical duties. *Sheridan,* 741 A.2d at 1161–62. However, these factors are not sufficiently strong to overcome the *Addams* presumption of disbarment, particularly in light of the aggravating factor of Sheridan's prior discipline in Virginia and the District.