In re Edward P. GALLAGHER, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 02–BG–1375.

District of Columbia Court of Appeals.

Argued Oct. 12, 2005.
Decided Oct. 27, 2005.

Edward P. Gallagher, Washington, pro se.

John T. Rooney, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before TERRY and RUIZ, Associate Judges, and NEWMAN, Senior Judge.

RUIZ, Associate Judge:

On November 13, 2002, the Court of Appeals of Maryland disbarred respondent, Edward P. Gallagher, a member of the bar of this court.[1] Respondent did not report this discipline to Bar Counsel as required by D.C. Bar R. XI, § 11(b). Bar Counsel notified us of the Maryland disbarment, and we temporarily suspended respondent on December 19, 2002, pursuant to D.C. Bar R. XI, § 11(d), and referred the matter to the Board on Professional Responsibility ("Board") for a determination of whether identical, greater or lesser discipline should be imposed as reciprocal discipline, or whether the Board would proceed *de novo*.[2]

The Board's recommendation is that this court impose the identical reciprocal discipline of disbarment since respondent was found to have, among other ethical infractions, misappropriated client funds, which warrants disbarment in the District of Columbia. *See In re Addams*, 579 A.2d 190, 191 (D.C.1990) (en banc). Bar Counsel supports this recommendation. Respondent challenges the Board's recommendation, arguing that identical reciprocal discipline should not be imposed because he was not afforded due process in the Maryland disciplinary proceedings. Unable to find any constitutional infirmity in our review of the Maryland proceedings, we

---

1. Respondent was admitted to the bar of this court by motion on May 2, 1994.

2. Following his Maryland disbarment, respondent was disbarred from the United States Court of Appeals for the District of Columbia Circuit as reciprocal discipline.

agree with the Board that the respondent's actions in Maryland warrant the identical reciprocal discipline of disbarment in the District of Columbia.

## I. *The Maryland Proceedings*

■ The events that led to the suspension of Gallagher's license in Maryland were fully explored in an evidentiary hearing before Circuit Court Judge Julie R. Stevenson, whose findings of fact and conclusions of law were adopted by the Maryland Court of Appeals. *See Attorney Grievance Comm'n v. Gallagher*, 371 Md. 673, 810 A.2d 996, 1000 (2002). We defer to findings of fact made by other courts in reciprocal proceedings. *See* D.C. Bar R. XI, § 11(c) ("[A] final determination by a disciplining court outside the District of Columbia or by another court in the District of Columbia that an attorney has been guilty of professional misconduct shall conclusively establish the misconduct for the purpose of a reciprocal disciplinary proceeding in this Court.").

The disciplinary petition in Maryland charged respondent with violations of the Maryland Rules of Professional Conduct ("MRPC"), namely by failing to communicate with a client; commingling and misappropriating client funds; failing to keep a proper accounting of client funds; knowingly violating the Maryland Rules of Professional Conduct; committing a criminal act reflecting adversely on honesty, trustworthiness, or fitness; engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; and engaging in conduct prejudicial to the administration of justice.[3] *Gallagher*, 810 A.2d at 998–99 n. 3. It also alleged that he misused trust money and engaged in prohibited transactions.[4] *Id.* at 998–1000 nn. 2–5. Specifically, the Maryland Circuit Court found that respondent entered into an escrow agreement with a client in India, Mr. Philip Lobo, for whom he was to obtain an L–1 visa. *Id.* at 1001–02. The agreement provided that the respondent would deposit the $30,000 Mr. Lobo had wired respondent into a "legal escrow account," and that in the case of "non-performance on project funding and or inability to obtain L–1 Visa approval" for Mr. Lobo, the $30,000 would be refunded "promptly." *Id.* When Mr. Lobo had not received his visa after about five months, he abandoned the matter and moved to Australia. *Id.* at 1003. When Mr. Lobo requested that his $30,000 be returned, respondent indicated that the account had been liquidated and its contents distributed to a Mr. Suri, who had been an intermediary of sorts between respondent and Mr. Lobo, and who had previously been described to Mr. Lobo as respondent's partner. *Id.* at 1001–03.

The Maryland disciplinary authorities investigating this matter discovered that the original $30,000 wire from Mr. Lobo went directly into respondent's personal bank account, not into an escrow account. *Id.* at 1003–04. Two wires totaling $3,180 were sent from this account to an account in England shortly after the original $30,000 deposit. *Id.* at 1004. Respondent then opened the escrow account for Mr. Lobo, in which he deposited only $23,750. *Id.* Over the next six months, the account balance dwindled to less than $600.00 after another wire was sent to England in the amount of $549.75, and five checks were

---

**3.** In violation of Rules 1.4(a), 1.15(a) & (b), 8.4(a), (b), (c), & (d), respectively, of the MRPC.

**4.** In violation of two provisions of the Business Occupation and Professions Article of the Maryland Code ("Md.Code"), §§ 10–302, 10–306, and Maryland Rules of Procedure ("Md. Rules") §§ 16–603, 16–604, 16–606, 16–607, and 16–609, respectively.

written to respondent, signed by respondent or his wife (who along with respondent, was a signer on the account). *Id.* The Maryland court found that respondent offered no clear explanation for these disbursements, and that they were "clearly inconsistent" with the escrow agreement signed by respondent. *Id.* The Maryland court did not believe respondent's assertions that the disbursements were made at Mr. Lobo's request, and credited Mr. Lobo's testimony to the contrary. *Id.* at 1004–05. Additionally, during its investigation of Mr. Lobo's complaint, the Maryland authorities also discovered that respondent had used another client's funds for improper purposes, misappropriating approximately $26,000. *Id.* at 1006.

The Maryland Court of Appeals, after adopting the Circuit Court's findings of fact, also agreed with the Circuit Court's conclusions of law, finding they were supported by clear and convincing evidence. *Id.* at 1007, 1111, 810 A.2d 996. It rejected all of respondent's numerous objections to the lower court's factual findings, concluding that respondent's allegations that Maryland Bar Counsel did not adequately investigate Mr. Lobo's credibility were without support in the record; his claim that the Circuit Court did not properly weigh credibility determinations regarding Mr. Lobo was specifically contradicted by the record, since the credibility issue had been raised before the trial court and specifically considered by it; and his assertion that the escrow agreement never existed also had no factual support. *Id.* at 1009–11. Additionally, the Maryland Court of Appeals rejected all of respondent's claims of legal error by the trial court, including his assertion that his due process rights had been violated when he was not able to cross-examine Mr. Lobo, in person, in a Maryland courtroom. *Id.* at 1011–15. The Maryland Court of Appeals found that respondent had received adequate notice of and had participated in all hearings on this matter, including the video-conferenced deposition of Mr. Lobo, during which respondent was "able to conduct a broad cross-examination of the witness ...." *Id.* at 1012. It also held that the introduction of this videotaped deposition into evidence was clearly in accordance with Maryland rules. *Id.* at 1012–15.

The Maryland Court of Appeals concluded that respondent had intentionally misappropriated client funds (in violation of Md. Rule 16–609 and Md.Code § 10–306); commingled client funds with his own (in violation of MRPC 1.15, Md.Code § 10–302, and Md. Rule 16–607); did not properly maintain a client trust account or provide his client with an accounting of his funds (in violation of Md. Rules 16–603, 16–604 & 16–607); failed to keep his client informed (in violation of MRPC 1.4(a)); willfully engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation (in violation of MRPC 8.4(a-c)); and engaged in conduct prejudicial to the administration of justice (in violation of MRPC 8.4(d)). *Id.* The Court then disbarred respondent. *Id.* at 1021.

## II. *District of Columbia Proceedings*

█ In reciprocal discipline matters, D.C. Bar R. XI, § 11(f)(2) provides that identical discipline will be imposed unless the attorney demonstrates, or the court finds on the face of the record, by clear and convincing evidence, that one of the five exceptions set forth in D.C. Bar R. XI, § 11(c) applies. *See In re Garner,* 576 A.2d 1356, 1357 (D.C.1990) (per curiam). The rule "creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original jurisdiction." *In re Zilberberg,* 612 A.2d 832, 834 (D.C.1992) (citing *In re Velasquez,* 507 A.2d 145, 146–47 (D.C.1986) (per curiam)).

The exceptions, if established by clear and convincing evidence, that will overcome the rebuttable presumption of identical reciprocal discipline are: "(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or (3) The imposition of the same discipline by the Court would result in grave injustice; or (4) The misconduct established warrants substantially different discipline in the District of Columbia; or (5) The misconduct elsewhere does not constitute misconduct in the District of Columbia." D.C. Bar R. XI, § 11(c). The rule continues, "[u]nless there is a finding by the Board under (1), (2), or (5) above that is accepted by the Court, a final determination by a disciplining court outside the District of Columbia or by another court in the District of Columbia that an attorney has been guilty of professional misconduct shall conclusively establish the misconduct for the purpose of a reciprocal disciplinary proceeding in this Court." *Id.*

 The Board determined that none of Rule XI, § 11's five exceptions to imposing identical reciprocal discipline applied to respondent's case. *See* D.C. Bar R. XI, § 11(b). It found that respondent was clearly afforded due process by the Maryland Court; there was no doubt that evidence of respondent's misconduct was sufficient to establish the charged violations; there would be no grave injustice suffered by the imposition of identical discipline; and that respondent's conduct did not warrant substantially different discipline in the District of Columbia than it did in Maryland. Respondent argues, however, that the reciprocal imposition of disbar-

ment by this court would result in a grave injustice. A determination that one or more of the exceptions set forth in D.C. Bar R. XI, § 11(c) applies is a question of law or ultimate fact. Accordingly, the court's review is *de novo. See In re Fair,* 780 A.2d 1106, 1110–11 (D.C.2001).

The basis of respondent's legal argument that a grave injustice would result if he were disbarred by this court stems from his assertion that he was denied due process by the Maryland courts when the videotaped deposition of Mr. Lobo was introduced as evidence. However, the Maryland Court of Appeals specifically held that the admission of this testimony was in accordance with Maryland law, a point respondent concedes, and that respondent was able to conduct a broad cross-examination of Mr. Lobo during the deposition. Based on this videotape, the Court of Appeals specifically found, contrary to respondent's assertions, that the Circuit Court was able to assess the witness's demeanor, facial expressions, and mannerisms, and therefore make credibility determinations. *See Gallagher,* 810 A.2d at 1014–15.

 The fundamental requirements of due process are notice and an adequate opportunity to appear and contest charges. *See In re Shieh,* 738 A.2d 814, 816–17 (D.C.1999); *Jerome Mgmt. v. District of Columbia Rental Hous. Comm'n,* 682 A.2d 178, 183 (D.C.1996). Sixth Amendment rights may be implicated where the testimony of a witness is introduced without giving the respondent a right to cross-examine the witness. *See, e.g., Crawford v. Washington,* 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Here, respondent has not argued defects in notice. Therefore, since respondent was given notice, participated in the hearings, and, as the Maryland Court of Appeals found, was given a full opportunity to cross-examine

Mr. Lobo, his constitutional claim is without merit. Because respondent has not presented clear and convincing evidence establishing a violation of due process or the danger of a grave injustice, we must rely on the Maryland court's determination that respondent committed the enumerated ethical violations. *See* D.C. Bar R. XI, § 11.

▮ Respondent's disagreements with the Maryland court's findings of fact cannot be entertained by this court. He repeats attacks against the Maryland court's findings that were raised in the Maryland proceedings, again challenging the sufficiency of the investigatory procedures; the weight accorded to Mr. Lobo's testimony; the determination of whether respondent effectively petitioned for Mr. Lobo's L–1 visa; and the nature of the escrow account. We cannot consider them, as they constitute an attempt to re-litigate the facts already determined in Maryland. *See In re Sheridan,* 798 A.2d 516, 518 n. 2 (D.C. 2002). As we stated in *Sheridan,* our role in reciprocal discipline cases differs from that in original discipline matters. *See id.* (citing *Velasquez,* 507 A.2d at 146). First, "there is no need for a de novo repetition of the entire process, and the burden of persuasion is reversed," and "second, there is merit in the idea of granting due deference—for its sake alone—to the opinions and actions of a sister jurisdiction with respect to attorneys over whom we share supervisory authority." *Id.* (quoting *Velasquez,* 507 A.2d at 147). "Put simply, reciprocal discipline proceedings are not a forum to reargue the foreign discipline." *In re Zdravkovich,* 831 A.2d 964, 969 (D.C. 2003). We will not disturb the conclusion of the Maryland Court of Appeals that there was clear and convincing evidence, on the facts found by the Circuit Court, that respondent misappropriated client funds and otherwise violated various rules

of professional conduct. *See id.; Benjamin,* 698 A.2d at 440.

▮ Respondent's misconduct in Maryland, namely misappropriation and dishonesty, if committed here, would justify disbarment. *See In re Roberson,* 861 A.2d 1267, 1268 (D.C.2004) (citing *Addams,* 579 A.2d at 191; *In re Slattery,* 767 A.2d 203 (D.C.2001)). Our case law has established the definition of misappropriation as "any unauthorized use of [a] client's funds entrusted to [the attorney], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Chang,* 694 A.2d 877, 880 (D.C.1997) (quoting *In re Harrison,* 461 A.2d 1034, 1036 (D.C.1983)); *see also* D.C. Rule Prof'l Conduct 1.15(a). In considering misappropriation cases, we held in *Addams* that "in virtually all cases of misappropriation, disbarment will be the only appropriate action ... [we] shall regard a lesser sanction as appropriate only in extraordinary circumstances." *Addams,* 579 A.2d at 191, *quoted in Sheridan,* 798 A.2d at 523.

There are no such extraordinary circumstances in this case. We do not glean from the record nor from respondent's representations any evidence, much less that which is clear and convincing, that would justify departing from the presumption of imposing identical reciprocal discipline. Therefore, we adopt the Board's recommendation that the identical reciprocal sanction of disbarment be imposed on respondent.

We note that the Board has indicated that respondent has not filed an affidavit that complies with D.C. Bar R. XI, § 14(g), and consequently, respondent's disbarment, for purposes of reinstatement, will run from the time a sufficient affidavit is filed. *See* D.C. Bar R. XI, § 16(c). We encourage respondent to work with Bar

Counsel to ensure all of the requirements of § 14(g) are met by his next attempt to comply with the rule.

Accordingly, it is

ORDERED that Edward P. Gallagher is disbarred from the practice of law in the District of Columbia.

*So ordered.*